IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOWARD FOSTER, individually and on behalf of all others similarly situated, | No. 15-cv-3325 |
| Plaintiff, | Judge Andrea R. Wood |
| v. | Magistrate Judge Michael T. Mason |
| AARON JON SCHOCK and JOHN DOES 1-100, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT AARON JON SCHOCK'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

Defendant Aaron Jon Schock, by and through his attorneys, and for his memorandum of law in support of his Motion to Dismiss Plaintiff Howard Foster's complaint pursuant to Fed. R. Civ. P. 12(b)(6), states as follows:

**INTRODUCTION**

Plaintiff's use of a civil action under the Racketeer Influenced and Corrupt Organizations Act ("civil RICO") to complain about political speech is unprecedented and baseless. This lawsuit improperly attempts to impose upon courts the role of the final arbiter of political truth. This novel theory cannot succeed, as it would upend the American constitutional order where *the people* judge whether candidates are qualified to govern.

Fortunately, this Court need not confront the constitutional implications of this civil RICO lawsuit because Plaintiff's claims are meritless. The Complaint seizes on an altogether commonplace event in the life of a congressional campaign: Aaron Schock told prospective supporters that he is a man of honesty and integrity. Plaintiff evidently now disagrees, and offers

up a grab bag of alleged wrongdoing in an attempt to impeach Mr. Schock's character. These allegations, however, do not come close to meeting the high bar for fraud claims: Plaintiff cannot allege that Mr. Schock made any material misrepresentations, and does not plausibly allege that he had any intent to deceive. At most, Plaintiff recites that Mr. Schock made the types of opinion statements that courts consistently find inactionable in fraud cases. And while Plaintiff claims that he received the communications in question in a letter from Mr. Schock's campaign, Plaintiff never even identifies the precise statements that were allegedly false. The Complaint must be dismissed.

## FACTUAL ALLEGATIONS

Beginning in 2008, Mr. Schock represented Illinois' 18th Congressional District in the United States House of Representatives. Plaintiff alleges that in early 2012, he received mailings from Mr. Schock's campaign committees describing him as young, honest, different from other Illinois politicians who had been indicted in recent scandals, and having the potential to change the image of the Republican party to make it more appealing to millennials. Complaint, Dkt. no. 1, ("Compl.") ¶ 8; *see also* Compl. ¶ 59 (the "fundraising letters emphasiz[ed] the themes of integrity, freshness, and his bright future as a party leader"). The alleged mailings are neither quoted in the Complaint nor included as attachments. Plaintiff alleges that he contributed $500 to Mr. Schock's campaign after receiving those mailings. Compl. ¶ 7.

Plaintiff disagrees with the description of Mr. Schock as honest. Plaintiff points to Mr. Schock's travel mileage reimbursements, the sale of his house, airplane flights, gift disclosures, and office renovations as evidence of alleged dishonesty. Compl. ¶¶ 17-41. Plaintiff alleges that he would not have contributed to Mr. Schock's campaign if he had known about those transactions. Compl. ¶ 7. Mr. Schock resigned from Congress in March 2015.

## ARGUMENT

I.   **Plaintiff's Demand That This Court Judge The Political Truth Of Mr. Schock's Campaign Speech Raises Grave Constitutional Concerns**

The First Amendment defends the principle that *the people*, and not the government, have the right to judge the qualifications of candidates and the truth of campaign speech. *281 Care Comm. v. Arneson*, 766 F.3d 774, 796 (8th Cir. 2014) ("The citizenry, not the government, should be the monitor of falseness in the political arena."); *Rickert v. Pub. Disclosure Comm'n*, 168 P.3d 826, 827 (Wash. 2007) ("The notion that the government, rather than the people, may be the final arbiter of truth in political debate is fundamentally at odds with the First Amendment."). Thus "[o]ur constitutional tradition stands against the idea that we need Oceania's Ministry of Truth." *United States v. Alvarez*, 132 S. Ct. 2537, 2547 (2012) (plurality) (citing G. Orwell, *Nineteen Eighty-Four* (1949)). And "given our historical skepticism of permitting the government to police the line between truth and falsity . . . we presumptively protect all speech, including false statements, in order that clearly protected speech may flower in the shelter of the First Amendment." *281 Care Comm. v. Arneson*, 638 F.3d 621, 636 (8th Cir. 2011).

The First Amendment's core protections are for campaign speech about the candidates themselves. "In a republic where the people are sovereign," citizens must retain the right "to make informed choices among candidates for office" because those candidates "will inevitably shape the course that we follow as a nation." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346-47 (1995). In particular, "debate on the qualifications of candidates [is] integral to the operation of the system of government established by our Constitution." *Id.* at 346. Thus the First Amendment has "its fullest and most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971).

Plaintiff instead asks *this Court* to judge the political truth of Mr. Schock's campaign speech. That demand flies in the face of the First Amendment. Courts assessing other demands to elevate the government as the final arbiter of political truth have refused, concluding that the First Amendment standard of strict scrutiny protects political campaigns from that sort of speech regulation. *See, e.g.*, *281 Care Committee*, 766 F.3d at 785; *Susan B. Anthony List v. Ohio Elections Comm'n*, 45 F. Supp. 3d 765, 775 (S.D. Ohio 2014). Those demands inevitably fail strict scrutiny because they create a profound risk of chilling the campaign speech that the First Amendment is meant to encourage. *See 281 Care Committee*, 766 F.3d at 793-94; *Susan B. Anthony List*, 45 F. Supp. 3d at 777-778. Although there was nothing false about Mr. Schock's campaign, "some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation." *Alvarez*, 132 S. Ct. at 2544 (plurality). Plaintiff's quest to impose massive civil liability on campaign speech would squelch that open and vigorous expression of views.[1]

It makes no difference that Plaintiff couches his request for an adjudication of political truth in terms of "fraud." While garden-variety fraud in other contexts may be addressed without serious First Amendment problems, *see Alvarez*, 132 S. Ct. at 2547, fraud allegations relating to *campaign speech* in particular raise the same concerns that require strict scrutiny for the regulation of allegedly false speech generally. *See, e.g.*, *281 Care Committee*, 766 F.3d at 785; *Susan B. Anthony List*, 45 F. Supp. 3d at 775. The Supreme Court accordingly recognizes that

---

[1] It makes no difference that this case would threaten civil liability (if Plaintiff had any viable claims) rather than restraint by the government directly. It is well established that the First Amendment shields speakers from civil liability no less than criminal punishment; "[i]t matters not that that law has been applied in a civil action and that it is common law only, though supplemented by statute." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964) (First Amendment protects speakers against defamation liability absent "actual malice"); *see also, e.g.*, *Fla. Star v. B.J.F.*, 491 U.S. 524, 541 (1989) (First Amendment requires "public disclosure of private facts" tort plaintiffs to satisfy strict scrutiny).

"political speech must prevail against laws that would suppress it, whether by design or inadvertence." *Citizens United v. FEC*, 558 U.S. 310, 312 (2010). The alternative is to open up a bonanza of fraud claims against politicians by disaffected donors who claim to have been misled by campaign speech. In fact, if the commonplace campaign statements in *this* case can be spun into a fraud claim, then there will be no shortage of political fraud claims in the future. *See, e.g.*, Barack Obama, Weekly Address (June 6, 2009) ("[I]f you like the plan you have, you can keep it."); George H.W. Bush, Address to the Republican Nat'l Convention (Aug. 18, 1988) ("Read my lips: no new taxes."). The First Amendment could not countenance that.

Thus, the First Amendment forbids what Plaintiff seeks: a judicial declaration that Mr. Schock's campaign speech was untrue and that he lacks the honesty and integrity appropriate for elected office. If there were no other basis for resolving this lawsuit, it would be necessary for the Court to hold that the First Amendment bars Plaintiff's causes of action in this case. *See Ashwander v. TVA*, 297 U.S. 288, 347-48 (1936) (Brandeis, J., concurring).

**II.  Plaintiff Fails To State A RICO Claim Based On Mr. Schock's Campaign Speech**

Fortunately, this Court can easily avoid the constitutional question in this case because Plaintiff's legal theories are all fatally defective on nonconstitutional grounds—starting with civil RICO. RICO is a statute meant to combat organized crime; it forbids "any person employed by or associated with any enterprise" affecting interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Here, Plaintiff tries to shoehorn his meritless fraud claims into RICO by claiming that the campaign committees associated with Mr. Schock constituted an enterprise called an "association-in-fact," § 1961(4), Compl. ¶ 58, and that Mr.

5

Schock participated in the affairs of that enterprise through a pattern of mail fraud by describing himself as a man of honesty and integrity. Compl. ¶ 60; *see also* 18 U.S.C. §§ 1341, 1961(1).

Those allegations fail for two principal reasons. First, Plaintiff's gauzy accusations do not come close to pleading mail fraud, so there is no "racketeering act." And second, Plaintiff has not pleaded the pattern of racketeering activity that is the hallmark of RICO.

### A. The Complaint Does Not Come Close To Pleading Mail Fraud

Mail fraud under 18 U.S.C. § 1341 requires (1) participation in a scheme to defraud; (2) intent to defraud; and (3) use of the mail in furtherance of the scheme to defraud. *Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1005 (7th Cir. 2004). Plaintiff has not alleged a scheme or intent to defraud, let alone with the particularity required by Rule 9(b).

#### 1. The Complaint Does Not Allege Any Material Misrepresentations

First, Plaintiff's mail fraud allegations founder because he has not remotely alleged a "scheme to defraud." A scheme to defraud requires a "deliberate, *material* misrepresentation[n]." *Perlman v. Zell*, 185 F.3d 850, 854 (7th Cir. 1999). Thus, the scheme must involve statements "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Spiegel v. Continental Ill. Nat'l Bank*, 790 F.2d 638, 646 (7th Cir. 1986); *see also Corley*, 388 F.3d at 1009. "Only 'knowingly false statements of fact,' as opposed to expressions of opinion, can support the existence of a scheme to defraud." *Langley v. Am. Bank of Wisc.*, 738 F. Supp. 1232, 1238 (E.D. Wisc. 1990) (quoting *United States v. Shelton*, 669 F.2d 446, 465 (7th Cir. 1982)). For that reason, "inherently subjective expressions" are "ill-suited as the basis" for mail fraud claims. *Corley*, 388 F.3d at 1008-09.

None of the alleged statements in the Complaint supports a scheme to defraud. The main thrust of Plaintiff's fraud allegation appears to be that Mr. Schock's campaign advertisements

6

described him as "honest" and "emphasiz[ed] the themes of integrity, freshness, and his bright future." Compl. ¶¶ 8, 59. Those statements simply are not material misrepresentations that could support a mail fraud claim. *See ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) (although a reputation for integrity is important, "broad, general" statements regarding integrity are not material). Mail fraud does not attach to highly subjective expressions of opinion, *Corley*, 388 F.3d at 1008-09, because those are statements on which "no person of ordinary prudence and comprehension would rely." *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003). Thus courts have overwhelmingly recognized that general descriptions of honesty and integrity are "not the stuff of which fraud claims are made." *DBI Investments, LLC v. Blavin*, __ F. App'x __, 2015 WL 1379680, at *10 (6th Cir. Mar. 26, 2015).[2] Those same principles apply with equal force to statements in political campaigns, *see, e.g.*, *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107 (10th

---

[2] *See also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) ("general statements about reputation, integrity, and compliance with ethical norms are inactionable"); *ECA & Local 134 IBEW*, 553 F.3d at 205 (a self-professed "standard-setting reputation for integrity" was too general to sustain a charge of fraud); *DBI Investments, LLC*, 2015 WL 1379680, at *10 (defendant's statement that he would conduct himself with "scrupulous honesty" and integrity is not actionable for fraud); *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37 (2d Cir. 2012) (claim of integrity was not actionable); *Lasker v. N.Y. State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir. 1996) (claim of uncompromised "financial integrity" is inactionable); *Strougo v. Barclays PLC*, __ F. Supp. 3d __, 2015 WL 1883201, at *7 (S.D.N.Y. Apr. 24, 2015) (generalizations about integrity are not actionable); *Trs. of Hackberry Baptist Church v. Womack*, No. 4:14-CV-00037, 2014 WL 5332714, at *5 (W.D. Va. Oct. 20, 2014) ("self-proclaimed honesty and fair dealing" is an expression of opinion, not fraud); *In re SAIC, Inc. Sec. Litig.*, No. 12 Civ. 1353 (DAB), 2013 WL 5462289, at *13 (S.D.N.Y. Sept. 30, 2013) (statements regarding integrity and commitment to ethics were not actionable); *Fisher v. Kanas*, 467 F. Supp. 2d 275, 282 (E.D.N.Y. 2006) (generalizations regarding integrity were not actionable); *In re N.Y. Cmty. Bancorp, Inc., Sec. Litig.*, 448 F. Supp. 2d 466, 478-79 (E.D.N.Y. 2006) (same); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 632-33 (S.D.N.Y. 2005) (same); *Turner v. Johnson & Johnson*, 549 F. Supp. 807, 812 (D. Mass. 1982) (claims of honesty and trustworthiness were not actionable).

7

Cir. 2009); *Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 F. 853, 856 (2d Cir. 1918) (Hand, J.), where it is *de rigeur* for candidates to explain their virtues to prospective voters in similar terms.

None of the other statements alleged in the Complaint support a fraud claim either. First, it is undeniably true that Mr. Schock was "young," Compl. ¶ 8: he was first elected to Congress at age 27, only two years past the constitutional minimum. *See* U.S. Const., art. I, § 2, cl. 2. Campaign statements about Mr. Schock's "potential to change the image of the Republican party" are likewise not fraudulent because they were not false: the Complaint itself recognizes that Mr. Schock had already begun to realize his potential during his time in office. *See* Compl. ¶¶ 6, 13. Moreover, no "person of ordinary prudence and comprehension," *Corley*, 388 F.3d at 1009, could construe a statement of belief in Mr. Schock's political "potential" as a guarantee of future electoral success. And in any event, "generalized statements of optimism that are not capable of objective verification . . . are not actionable." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997). For the same reasons, no fraud claim could inhere in any statement that Mr. Schock is "different" from politicians like Rod Blagojevich and George Ryan. Compl. ¶ 8. Again, that is a pure expression of opinion and a "highly subjective" one at that. *Corley*, 388 F.3d at 1008. Because none of the campaign statements in the Complaint contains any material misrepresentation, Plaintiff's mail fraud allegation fails for lack of fraud.

### 2. The Complaint Fails To Allege Any Intent To Defraud

The mail fraud allegations fail because Mr. Schock *did not* defraud anyone, but also because there was no *intent* to defraud anyone. Plaintiff fails to plausibly allege any intent to defraud, which requires "a wilful act by the defendant with the specific intent to deceive or cheat." *Corley*, 388 F.3d at 1005. A genuine belief that the statement was true is a complete defense to mail fraud. *See United States v. Dunn*, 961 F.2d 648, 650 (7th Cir. 1992).

Plaintiff's conclusory allegation of scienter, *see* Compl. ¶ 60, is insufficient to survive a motion to dismiss. *Grove Holding Corp. v. First Wisc. Nat'l Bank*, 803 F. Supp. 1486, 1501-02 (E.D. Wisc. 1992) (dismissing a civil RICO claim predicated on mail fraud where the assertions of scienter were "too conclusory"). First, notwithstanding the Complaint's unfounded allegations, Plaintiff offers no plausible reason to think that Mr. Schock doubted his own honesty. In addition, because the statements attributed to Mr. Schock in the Complaint are not calculated to deceive any reasonable person, *see supra* at 6-8, they further demonstrate that Mr. Schock had no intent to deceive. *See United States v. Coffman*, 94 F.3d 330, 334 (7th Cir. 1996).

### 3. The Complaint Fails To Plead Fraud With Particularity

When civil RICO claims are predicated on mail fraud, Fed. R. Civ. P. 9(b) requires the plaintiff to state "the circumstances constituting fraud" with "particularity," meaning that the complaint must state facts sufficient to portray "specific instances" of fraud. *Veal v. First Am. Sav. Bank*, 914 F.2d 909, 913 (7th Cir. 1990). Thus a plaintiff must plead "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Courts in this district have accordingly dismissed complaints that fail to identify "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994); *see also Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597–600 (7th Cir. 2001) (affirming the dismissal of a civil RICO suit for lack of particularity with respect to fraud claims); *Goren v. New Vision Int'l*, 156 F.3d 721, 726, 729–30 (7th Cir. 1998) (same); *Drobny v. JP Morgan Chase Bank*, 929 F. Supp. 2d 839, 849 (N.D. Ill. 2013) (same). The purpose of this heightened pleading requirement in fraud cases is "to force the plaintiff to do more than the usual

9

investigation before filing his complaint" because "public charges of fraud can do great harm to [an individual's] reputation" and because "fraud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 479 (7th Cir. 1999).

Plaintiff does not plead any specific instance of fraud with particularity. We are told that Plaintiff received mailings from Mr. Schock's campaign sometime "in early 2012," but Plaintiff fails to provide the content of those mailings. Compl. ¶ 8. Instead, he provides only his own questionable paraphrase—a paraphrase that obscures the actual language on which Plaintiff claims to have relied. But details matter in fraud claims, and because Plaintiff admits that he personally received mailings in 2012, he "cannot therefore complain of an inability to ascertain the details of these communications." *Jepson, Inc.*, 34 F.3d at 1328.

Likewise, Plaintiff alleges there were other "mail fraud violations" from 2010 until March 2015, but Plaintiff does not state what those other mailings said or who received them. *See Baldwin v. Star Scientific, Inc.*, __ F. Supp. 3d __, 2015 WL 170407, at *10 (N.D. Ill. 2015) ("Plaintiff must identify a specific misrepresentation that he saw [and] the date he saw it."). There is accordingly no particularized basis for concluding that there were *any* mail fraud violations, let alone a basis pleaded with the particularity required by Rule 9(b).

      **B.**      **The Complaint Does Not Plead A Pattern Of Racketeering Activity**

The Complaint must also be dismissed because it fails to plead a "pattern of racketeering activity." 18 U.S.C. § 1962(c). "Congress was concerned in RICO with long-term criminal conduct," not isolated or sporadic predicate acts. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989). Thus it is not enough that a person participates in the conduct of an enterprise's

10

affairs through limited instances of mail fraud—RICO liability requires participation "through a *pattern* of racketeering activity." § 1962(c) (emphasis added).

Civil RICO plaintiffs therefore must show "that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc.*, 492 U.S. at 240. "'Continuity' is both a closed- and open-ended concept." *Id.* at 241. It can refer either to "a closed period of repeated conduct," or to "past conduct that by its nature projects into the future with a threat of repetition." *Id.* Because Mr. Schock is no longer in office and is not seeking office, his past campaigns do not "project[] into the future." *Id.* at 241; *see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995) (a "hypothetical possibility of further predicate acts" cannot establish a threat of repetition).

Thus, Plaintiff must show a pattern of racketeering activity by a "closed period of repeated conduct." *H.J. Inc.*, 492 U.S. at 241. To prove continuity over a closed period, the plaintiff must show "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* at 242.

Plaintiff cannot show such a pattern because he has failed to plead *a single* instance of mail fraud with particularity, let alone a pattern of mail fraud stretching more than "a few weeks or months." *Id.* "[W]ithout an adequately detailed description of the predicate acts of mail and wire fraud, a complaint does not provide either the defendant or the court with sufficient information to determine whether or not a pattern of racketeering activity has been established." *Jepson, Inc.*, 34 F.3d at 1328. Even if Plaintiff received more than one mailing in early 2012, Compl. ¶ 8, that is nowhere near enough time to establish a pattern. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) ("Notably, this Court has never

11

found a closed-ended pattern where the predicate acts spanned fewer than two years."); *Slaney*, 244 F.3d at 599 ("a multiplicity of mailings does not necessarily translate into a 'pattern' of racketeering activity."). Finally, the Complaint provides no plausible basis for concluding that the content of any other mailing from Mr. Schock's campaign was fraudulent, let alone fraudulent in the same way as the early 2012 mailings as would be required to form a "pattern." Plaintiff's civil RICO claim accordingly fails.

### III. Plaintiff's Kitchen-Sink Claims Under Illinois Law Must Be Dismissed For Many Of The Same Reasons

In addition to his defective civil RICO claim, Plaintiff includes three common law claims based on the same facts. But the same failure to plead fraud that doomed his civil RICO claim also infects his state-law claims. Each of them must be dismissed.

#### A. Plaintiff Fails To State A Claim For Common Law Fraud

First, Plaintiff recycles the same inadequate civil RICO allegations in a common law fraud claim. To prove common law fraud, Plaintiff must establish "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; [and] (4) action by the plaintiff in justifiable reliance on the truth of the statement." *Doe v. Dilling*, 888 N.E.2d 24, 35-36 (Ill. 2008).

Plaintiff's common law fraud claim fails for the same reasons as the civil RICO claim. First, none of the statements identified in the Complaint are false statements of material fact: they are all either indisputably true or highly subjective statements of opinion. *See supra* at 6-8; *see also West v. W. Cas. & Sur. Co.*, 846 F.2d 387, 393 (7th Cir. 1988) ("A statement that merely expresses an opinion or that relates to future or contingent events, rather than past or present facts, does not constitute an actionable misrepresentation" under Illinois law.). Second, there is no plausible allegation that Mr. Schock believed that his campaign mailings were false. *See*

12

*supra* at 8-9. Third, reasonable people do not rely on generalized descriptions of honesty and integrity, so Plaintiff fails to plead justifiable reliance. *See supra* at 6-8. Finally, Plaintiff's common-law fraud claim is not pled with the particularity required by Rule 9(b) because it fails to state the specific content of any misrepresentation. *See supra* at 9-10.

### B. Plaintiff Fails To State A Claim For Promissory Estoppel

Next, Plaintiff brings a claim of promissory estoppel under Illinois law, which requires a plaintiff to prove that "(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990).

First, Plaintiff's promissory estoppel claim fails because he does not plead an "unambiguous promise." In fact, he does not identify *any* promise that Mr. Schock made; the only statements identified in the Complaint are that the campaign mailings described Mr. Schock as young, honest, different from other Illinois politicians, and having the potential to change the image of the Republican party. Compl. ¶ 8; *see also* Compl. ¶ 59 (the "fundraising letters emphasiz[ed] the themes of integrity [and] freshness"). Those are at most highly subjective opinions, but an "opinion . . . is not a promise." *Stringer Constr. Co. v. Chicago Hous. Auth.*, 563 N.E.2d 819, 825 (Ill. App. 1990); *see also Degen v. American Ass'n of Oral, Maxillofacial Surgeons*, No. 93-CV-4879, 1996 WL 166922, at *7-8 (N.D. Ill. Apr. 4, 1996). Plaintiff's conclusory allegation that Mr. Schock made an unambiguous promise, Compl. ¶ 75, therefore does not provide a plausible basis for promissory estoppel.

The promissory estoppel claim also fails because reliance was neither "expected" nor "foreseeable." As explained above (at 8-9), there is no plausible basis for concluding that Mr.

13

Schock intended to deceive *anyone*. Furthermore, statements described in the Complaint are not the sort of statements that a reasonable person would rely on. *See supra* at 6-8. The Complaint therefore fails to state a claim for promissory estoppel.

### C. Plaintiff's Unjust Enrichment Claim Fails As A Repackaged Version Of The Defective Fraud Claim

Finally, Plaintiff brings a claim for unjust enrichment under Illinois law. To succeed on such a claim, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).

Plaintiff's unjust enrichment fails in lockstep with the inadequate fraud claim. As the Complaint makes clear, the unjust enrichment count depends on the same facts that failed to state a claim for fraud. *See* Compl. ¶ 83. But "where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007); *see also Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. 2009).

Finally, this claim also fails because unjust enrichment is an equitable theory "based upon a contract implied in law." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) (quoting *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. 2004)). For that reason, in Illinois "a party may not recover damages for unjust enrichment pursuant to a *gift* relationship." *Liautaud v. Liautaud*, 221 F.3d 981, 988 (7th Cir. 2000) (emphasis added). These allegations involve a gift relationship; the Complaint accurately describes Plaintiff as a "Schock donor[]," and correctly states that Plaintiff and others were on record as "*donating*" to Mr.

14

Schock's campaign. Compl. ¶¶ 2, 44 (emphases added).[3] Under Illinois law, a donor like Plaintiff has no cause of action for unjust enrichment.

## CONCLUSION

For the foregoing reasons, Plaintiff fails to state a claim against Mr. Schock on which relief can be granted. The Court should enter an order granting this Motion to Dismiss and dismissing the Complaint with prejudice.

Dated: July 13, 2015

Respectfully Submitted,

**AARON JON SCHOCK**

By: /s/ Andrew R. Woltman
Howard C. Vick, Jr.
Brian D. Schmalzbach
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
(804) 775-4340
(804) 698-2247 (fax)
tvick@mcguirewoods.com
bschmalzbach@mcguirewoods.com

*Admitted pro hac vice*

Andrew R. Woltman
MCGUIREWOODS LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601
(312) 750-2272
(312) 698-5560 (fax)
awoltman@mcguirewoods.com

---

[3] Plaintiff curiously alleges that "[i]n making campaign contributions to Schock," he "conferred *non*-gratuitous benefits upon Schock." Compl. ¶ 84 (emphasis added). That statement is implausible: offering "*non*-gratuitous benefits" via campaign contributions suggests that Plaintiff viewed his contribution as being made in exchange for some unidentified benefit from Mr. Schock, *i.e.*, an illegal *quid pro quo*. The Complaint does not allege anywhere that Mr. Schock gave any benefit or made any promise to Plaintiff in exchange for campaign contributions.

## **CERTIFICATE OF SERVICE**

I, Andrew R. Woltman, an attorney, hereby certify that on July 13, 2015, I electronically filed the foregoing Memorandum with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Elizabeth A. Fegan
Daniel J. Kurowski
HAGENS BERMAN SOBOL
SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
(708) 628-4949
(708) 628- 4950 (fax)

Steve W. Berman
HAGENS BERMAN SOBOL
SHAPIRO LLP
1918 8th Ave., Suite 3300
Seattle, WA 98101
(206) 623-7292
(206) 623-0594 (fax)

*Attorneys for Plaintiff Howard Foster*

/s/ Andrew R. Woltman