IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HOWARD FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15-cv-03325 |
| | ) | |
| v. | ) | Judge Andrea R. Wood |
| | ) | |
| AARON SCHOCK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Howard Foster alleges that he made a campaign contribution to Defendant Aaron Schock, a former member of the United States House of Representatives, because of Schock's claims in fundraising mailings that he was an honest politician. Foster further alleges that subsequent events, including Schock's resignation from Congress, have proved his claims to be false. Foster seeks damages for the alleged falsehoods on behalf of himself and Schock's other donors under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and Illinois common law of fraud, unjust enrichment, and promissory estoppel. Now before the Court is Schock's motion to dismiss the complaint for failure to state a claim. (Dkt. No. 19.) For the reasons detailed below, the motion is granted and Foster's complaint is dismissed without prejudice.

## BACKGROUND

Howard Foster's complaint asserts that he received "repeated mailings" in "early 2012" from two campaign committees directed by Aaron Schock: Schock for Congress and the Schock Victory Committee. (Compl. ¶ 8, Dkt. No. 1.) Foster alleges that the mailings described Schock as "honest" and "different from other Illinois politicians who had been indicted in recent

scandals." (*Id.*) Foster further claims that he believed those representations and contributed $500 to Schock in April 2012 because of them. (*Id.* ¶ 7.) But according to the complaint, Schock's fundraising materials "utilized misrepresentations and omissions of material fact," as Schock was actually a "corrupt" politician engaged in illegal and unethical conduct. (*Id.* ¶¶ 8, 16.) Foster's complaint accuses Schock and various unidentified defendants of various violations of campaign finance laws and House of Representatives ethics rules. He seeks relief here under the federal RICO statute, which prohibits racketeering activity that violates the federal mail fraud statute, 18 U.S.C. § 1341, alleging that Schock used the mail to send his misleading communications, thereby triggering liability. Foster also asserts claims under Illinois common law for fraud, unjust enrichment, and promissory estoppel.

## DISCUSSION

In assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6), all well-pleaded allegations are taken as true and viewed in the light most favorable to the plaintiff. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). The complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914 (7th Cir. 2015). In addition, Federal Rule of Civil Procedure 9(b) requires a complaint alleging fraud to meet a more stringent pleading standard: the plaintiff must specify the identity of the person who made the fraudulent misrepresentation at issue, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to him. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994). Where, as here, an alleged RICO violation is predicated on a claim of mail fraud, the heightened Rule 9(b) standard applies to the underlying fraud claim. *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th

Cir. 2001). *Id.* "Loose references" to mailings are insufficient. *Jepson,* 34 F.3d at 1328. And when multiple defendants are involved, claims that group them together without specifying the behavior of individual actors are similarly flawed. *Dudley Enter., Inc. v. Palmer Corp.*, 822 F. Supp. 496, 500 (N.D. Ill. 1993).

Foster's complaint falls short of the Rule 9(b) standard. He describes the fraudulent communications as "repeated mailings from Schock's committees, Schock for Congress and the Schock Victory Committee, which arrived at Mr. Foster's home in early 2012." (Compl. ¶ 8, Dkt. No. 1.) However, the complaint provides no additional detail about the number of mailings, which mailings came from which committee, or when they came. Nor does the complaint attach or purport to quote any specific communication. Instead, it includes only brief descriptions of the allegedly fraudulent statements, such as:

> These mailings described Schock as . . . honest, different from other Illinois politicians who had been indicted in recent scandals . . . and having the potential to change the image of the Republican party to make it more appealing to millennials.
> . . . .
> . . . [Schock] directed his subordinates . . . to write his misleading fundraising letters emphasizing the themes of integrity, freshness, and his bright future as a party leader, to sign his name to them, and mail them to potential campaign contributors around the nation, and to conceal material facts.
> . . . .
> . . . Schock and John Does 1-100 made false statements of material fact to Plaintiff and the members of the Class, representing that he was a politician with integrity.
> . . . .
> . . . Schock and John Does 1-100 unambiguously promised and represented to Plaintiff and the members of the Class that Schock would represent the interests of campaign contributors with integrity as a member of the U.S. House of Representatives.
> . . . .
> . . . Schock and John Does 1-100 solicited and obtained millions of dollars of campaign contributions by representing Schock to be ethical, a breath of fresh air in Illinois politics, and have a bright future in Congress.

(*Id.* ¶¶ 8, 59, 68, 75, 82.)

3

The descriptions provided by Foster do not sufficiently identify the time, content, and speaker of the alleged misrepresentations to satisfy Rule 9(b). Foster argues that the rule should not be interpreted to require him to specify facts to which he does not have access. But the shortcomings of his pleading relate directly to facts within his knowledge—presumably he knows the specifics of the communications he received and allegedly relied upon in making the decision to contribute to Schock. Without the necessary detail, Foster's complaint fails to state a claim for mail fraud necessary for his RICO claim or his common law fraud claim. Because Foster's claims for promissory estoppel and unjust enrichment are based upon the same allegations of improper conduct, Rule 9(b) dictates their dismissal as well. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

## CONCLUSION

For the foregoing reasons, the Court concludes that Foster's claims are insufficiently pleaded under Rule 9(b). Schock's motion to dismiss is accordingly granted. Because plaintiffs are generally provided an opportunity to replead following an initial dismissal for failure to state a claim, this dismissal is without prejudice. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010).

ENTERED:

Dated: April 18, 2016

_____
Andrea R. Wood
United States District Judge