# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HOWARD FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15-cv-03325 |
| | ) | |
| v. | ) | Judge Andrea R. Wood |
| | ) | |
| AARON SCHOCK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Howard Foster alleges that he made a campaign contribution to Defendant Aaron Schock, a former member of the United States House of Representatives, because of Schock's claims in fundraising communications that he was an honest politician. Foster further alleges that subsequent events, including those surrounding Schock's resignation from Congress, have proved those claims to be false. Foster seeks damages for the alleged falsehoods on behalf of himself and Schock's other donors under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, and under the Illinois common law of fraud, unjust enrichment, and promissory estoppel. Now before the Court are Schock's motion to dismiss Foster's amended complaint for failure to state a claim for relief (Dkt. No. 54), Foster's motion for leave to conduct discovery (Dkt. No. 45), and Schock's motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure for Foster's filing of his amended complaint (Dkt. No. 57). For the reasons detailed below, Foster's amended complaint is dismissed and his motion for discovery is denied; Schock's motion for Rule 11 sanctions is also denied.

# BACKGROUND

The following factual summary is derived from the allegations in Foster's amended complaint, which are taken as true for purposes of Schock's motion to dismiss. *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016).

On November 4, 2011, Lisa Wagner, a Republican Party fundraiser, sent Foster an email message that invited him to meet with Schock. (Am. Compl. ¶ 20, Dkt. No. 44.) The message described Schock as a "rock star" and an "up and coming" legislator. (*Id.* ¶ 21; Compl. Exh. A, Dkt. No. 44-1.) Shock was first elected to the United States House of Representatives in 2008. (Am. Compl. ¶ 6, Dkt. No. 44.) Foster and Schock met at Foster's office on November 7, 2011. (*Id.* ¶ 22.) The next morning, Foster received from Schock a package containing campaign materials describing Schock as young, honest, different from other Illinois politicians who had been indicted in recent scandals, and having the potential to change the image of the Republican Party to make it more appealing to millennials. (*Id.* ¶ 23.) On November 13, 2011, Schock sent Foster an email requesting a contribution and help in "turning things around." (*Id.* ¶ 25.) Foster interpreted the message as a reference to their prior discussion of criminal proceedings against former Illinois governor Rod Blagojevich and an implied assertion by Schock that he was "the person to change dirty politics in Illinois." (*Id.*) Foster sent Schock a $500 contribution on April 19, 2012. (*Id.* ¶ 7.)

Schock resigned from Congress on March 31, 2015, around the time it was revealed that he had submitted falsely inflated car mileage claims to the House Administration Committee for reimbursement. (*Id.* ¶¶ 1, 30–32.) He also received a covert contribution from a supporter through the sale of his home at an extremely inflated price and violated House rules by using office funds to pay for flights on private planes and by accepting, but not reporting, in-kind gifts

from an advocacy group, a golf club, and an interior design firm. (*Id.* ¶¶ 33–35, 37–51.) Foster would not have contributed to Schock's campaign if he had known of Schock's improper activities. (*Id.* ¶ 8.) It is Foster's contention that Schock directed multiple campaign committees and workers to write misleading solicitations to potential contributors and to conceal material information from them for the common purposes of deceiving those contributors and enriching himself. (*Id.* ¶¶ 9–10, 16–17, 72–73.)

Foster's original complaint was dismissed without prejudice for failure to plead its fraud and fraud-based claims with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. (Dkt. No. 42.) His amended complaint seeks relief from Schock and unnamed collaborators under the mail and wire fraud provisions of the federal RICO statute, as well as the common law doctrines of fraud, promissory estoppel, and unjust enrichment. Each claim is based upon the allegation that Schock misrepresented himself as an honest politician and that he received campaign contributions as a result of that misrepresentation. Foster seeks to represent a class of plaintiffs who also donated to Schock on the basis of the alleged falsehoods. Discovery in this matter had been stayed pending disposition of Schock's prior motion to dismiss the original complaint. Along with his amended complaint, Foster filed a motion for leave to conduct limited discovery regarding the campaign materials that Schock distributed. For his part, Schock has opposed the motion for discovery and moved to dismiss all of Foster's claims in the amended complaint.

## DISCUSSION

In assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, all well-pleaded allegations are viewed in the light most favorable to the plaintiff. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). The complaint must provide

enough factual information to state a claim to relief that is plausible on its face and raises a right to relief above the speculative level. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914 (7th Cir. 2015).

Foster's RICO claims are based upon allegations that Schock's communications constituted mail and wire fraud. Necessary elements of mail and wire fraud are (1) a scheme to defraud; (2) an intent to defraud; and (3) use of the mails or wires in furtherance of the scheme. *United States v. Sloan*, 492 F.3d 884, 890 (7th Cir. 2007). A scheme to defraud requires the making of a false statement or material misrepresentation, or the concealment of material fact. *Id.* Where, as here, an alleged RICO violation is predicated on claims of mail and wire fraud, the heightened Rule 9(b) standard applies to the underlying fraud claims. *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001). Under Rule 9(b), a complaint's allegations of fraud must meet a more stringent pleading standard: the plaintiff must specify the identity of the person who made the fraudulent misrepresentation at issue, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to him. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994).

Foster specifies six communications as the basis for his claims. Two of the six, the November 8, 2011 contribution solicitation from Wagner and Foster's April 19, 2012 mailing of his contribution check, are not alleged to contain any false representations and are apparently offered primarily to show that the parties communicated by wire and mail for RICO purposes. (Am. Compl. ¶¶ 7, 24, Dkt. No. 44.)

Foster highlights portions of the remaining four communications as misrepresentations that Schock was an honest politician. The November 4, 2011 email message from Lisa Wagner called Schock a "rock star," portrayed him as an up-and coming legislator, and included

4

biographical details showing his civic achievements. The campaign materials received by Foster on November 8, 2011 portrayed Schock as "honest" and "different from other Illinois politicians who had been indicted in recent scandals." The November 13, 2011 email message from Schock asked for Foster's help in "turning things around," which Foster took to be a reference to a departure from corrupt politics. A June 27, 2012 press release from Schock, which came after Foster's donation, discussed former governor Blagojevich's criminal conviction and noted that Schock had called him "the most corrupt Governor in Illinois' history" as early as 2005. (*Id.* ¶ 27.)

Alleged misrepresentations that are insufficient to be characterized as fraud are also insufficient to support RICO claims predicated upon assertions of mail and wire fraud. *Jepson,* 34 F.3d at 1329–31. In the commercial context, vague and subjective statements of positive attributes are considered "puffery upon which no reasonable person could rely" and are thus properly found to be insufficient to support claims of fraud. *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1008–09 (7th Cir. 2004). Numerous courts have found general expressions of honesty and integrity not to be actionable under this analysis. *See, e.g.*, *Fisher v. Kanas,* 467 F. Supp. 2d 275, 282 (E.D.N.Y. 2006); *In re N.Y. Cmty. Bancorp, Inc., Sec. Litig.,* 448 F. Supp. 2d 466, 478–79 (E.D.N.Y. 2006); *Turner v. Johnson & Johnson*, 549 F. Supp. 807, 812 (D. Mass. 1982).

The parties in this case have not cited any precedent involving fraud claims based upon the campaign speech or solicitations of political candidates, and this Court's research has revealed none. But courts reviewing communications in other contexts have long referred to campaign speech as the paradigm of unreliable puffery. In *Vulcan Metals Co. v. Simmons*

*Manufacturing Co.*, 248 F. 853, 856 (2d Cir. 1918), for example, the Second Circuit, in rejecting a claim of fraud in a business sale, remarked:

> There are some kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity. If we were all scrupulously honest, it would not be so; but, as it is, neither party usually believes what the seller says about his own opinions, and each knows it. Such statements, like the claims of campaign managers before election, are rather designed to allay the suspicion which would attend their absence than to be understood as having any relation to objective truth.

*See also Presidio Enter., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 682 (5th Cir. 1986) (adopting *Vulcan Metals'* campaign manager commentary); *Risner v. Regal Marine Indus., Inc.*, 8 F. Supp. 3d 959, 998 (S.D. Ohio 2014) (same). The Tenth Circuit similarly has observed that "mass advertising expressed in vague terms (as in political campaigns) is not relied on by rational adults." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107 (10th Cir. 2009). And the Court of Appeals of Ohio has commented, "Whatever may be said for standards of verity during political controversies, political puffery is known widely enough to be judicially noticed." *Cleveland Police Patrolmen's Ass'n v. Voinovich*, 472 N.E.2d 759, 764 (Ohio Ct. App. 1984).

The principles identified by the courts listed above are readily applicable here. Foster's complaint, at its most specific, alleges only that Schock referred to himself as "honest" and "different" from other Illinois politicians. More generally, he criticized other Illinois politicians who had gained notoriety for various misdeeds, which Foster interpreted to be a further assertion that Schock was different. Such statements are the sort of generic claims of honesty and integrity that are too vague to be considered definitive representations upon which Foster, or any reasonable person, could rely. The elevated skepticism directed toward political communications only pushes Schock's statements further into the realm of inactionable puffery.

Foster alleges that he would not have contributed to Schock's campaign if not for the Schock's concealment of material information about his dishonesty. But a failure to disclose information is fraudulent only if the defendant has an independent duty of disclosure or if he has communicated affirmative misrepresentations or partial truths that make his silence misleading. *Reynolds v. E. Dyer Dev. Co.*, 882 F.2d 1249, 1252–53 (7th Cir. 1989); *Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 148 (N.D. Ill. 2005); *Anderson v. Lincoln Ins. Agency Inc.*, No. 02 C 8377, 2003 WL 291928, at *2 (N.D. Ill. Feb. 10, 2003). Foster has not alleged that Schock owed him any independent duty of disclosure, and Schock's general suggestions of honesty were too vague to prompt a listener to believe that Schock had thereby undertaken a duty to reveal any potentially contradictory information. The Court thus concludes that neither the communications identified by Foster nor the claimed withholding of information by Schock was sufficient to plead the fraudulent scheme required for a claim of mail or wire fraud. The finding that Schock's statements and concealments were not fraudulent for RICO purposes also defeats Foster's Illinois common law fraud claim. *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 890 F. Supp. 2d 912, 943 (N.D. Ill. 2012).

Foster also asserts an Illinois common law claim for unjust enrichment. To prevail on a claim for unjust enrichment under Illinois law, a plaintiff must show that the "defendant has unjustly retained a benefit to the plaintiff's detriment and . . . the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (internal quotations omitted). "The essence of the cause of action is that one party [has been] enriched, and it would be unjust for that party to retain the enrichment." *Id.* (internal quotations omitted). Because Foster's unjust enrichment and fraud claims are based upon the same allegations, dismissal of the fraud claim

also defeats his unjust enrichment claim. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (explaining that, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim"); *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) (finding that an unjust enrichment claim based on fraudulent dealings is no longer viable once the plaintiff's claims that those dealing were in fact fraudulent have been rejected).

Foster's promissory estoppel claim is similarly insufficient. To establish promissory estoppel under Illinois law, a "plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendant[], and (4) plaintiff relied on the promise to its detriment." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 566 (7th Cir. 2012) (citing *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523–24 (Ill. 2009)). Because of the vague and puffing nature of the Schock communications that form the basis for Foster's claims, they cannot be construed as unambiguous promises. Thus, Foster has not pleaded a required element of his promissory estoppel claim and that claim must be dismissed as well.

Foster seeks leave to conduct discovery of Schock's campaign communications so that he may obtain information that he needs to plead the specific identifying characteristics of those communications as required by Rule 9(b) and this Court's order dismissing his prior complaint. As discussed above, Foster's amended complaint, unlike his original pleading, identifies specific dates, parties, and transmission methods for six identified communications. This complaint is insufficient not because it fails to identify Schock's communications with the specificity required by Rule 9(b), but because the identified communications themselves are too vague and generic to

8

be actionable. As was suggested by the Court's prior order, Foster is presumed to know the nature of the representations upon which he claims to have relied and to have included their substance in his pleadings. The substance he has identified is not actionable, and the Court finds no basis for a determination that discovery of identifying details would produce a different result. Foster's motion for leave to take discovery is accordingly denied.

Finally, Schock asks that Foster be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure for filing his amended complaint. Rule 11(b) provides that the filing of any pleading, motion, or other paper constitutes a certification that the filing is not being presented for an improper purpose, such as harassment or delay, and that its legal contentions are warranted by existing law or a nonfrivolous argument for modifying or reversing existing law or establishing new law. A party or attorney violating this rule is subject to sanctions under Rule 11(c).

Schock argues that Foster's amended complaint suffers from the same deficiencies as the original complaint, and that there was no proper purpose for Foster to replead the same allegations previously found to be insufficient. But Foster's amendment did add specificity not present in the original complaint: rather than generalized assertions of misleading statements, the amended complaint identified parties, dates, and transmission methods of six specific communications. As described above, while the Court's determination that the prior complaint was insufficient turned on a lack of specificity, the present ruling addresses the non-actionable substance of the communications. Both parties have described the theory underlying Foster's claims as novel, and Schock has cited no authority rejecting similar allegations that would have alerted Foster that his claims were futile. Because Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories," an attorney need not advance a

9

winning argument to avoid Rule 11 sanctions. *LaSalle Nat'l Bank of Chicago v. Cty. of DuPage*, 10 F.3d 1333, 1338 (7th Cir. 1993) (quoting *Brubaker v. City of Richmond,* 943 F.2d 1363 (4th Cir. 1991)). Foster's filing of an amended complaint is not a proper basis for Rule 11 sanctions here and that request is denied.

## CONCLUSION

Accordingly, for the reasons discussed above, Schock's motion to dismiss (Dkt. No. 54) is granted. Because Foster has previously amended his complaint and because the substance of his claims in each pleading indicates that he seeks relief for non-actionable communications, this dismissal is with prejudice and his motion for leave to take discovery (Dkt. No. 45) is denied. Schock's motion for Rule 11 sanctions (Dkt. No. 57) is also denied.

ENTERED:

Dated: March 30, 2017

_____
Andrea R. Wood
United States District Judge